UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| Case No. | CR 12-651-CAS | | Date | December 16, 2013 |
|---|---|---|---|---|

| Present: The Honorable | CHRISTINA A. SNYDER |
|---|---|

| Interpreter | N/A |
|---|---|

| Catherine Jeang | Laura Elias | Terrance Mann |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1) JOSE DAVID VILLA | X | X | | 1) PEDRO CASTILLO | X | X | |
| 2) HARLOW ROBLES | X | X | | 2) ANTONIO YOON | X | X | |

**Proceedings:** DEFENDANT'S MOTION TO DISMISS  (Dkt. #65, Filed Nov. 27, 2013; and Dkt. #78, Filed Dec. 12, 2013)

## I.    INTRODUCTION

On July 11, 2012, a grand jury charged defendants Jose David Villa ("Villa") and Harlow Robles ("Robles") with multiple offenses related to narcotics and firearms. Dkt. #14.  The indictment charged Villa with conspiracy to distribute methamphetamine, in violation of 21 U.S.C. § 846 (count one); two counts of distribution of at least five grams of methampetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) (counts two and three); four counts of distribution of at least fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii) (counts four through seven); and possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) (count eight).  Id.  Robles is charged only in count one and counts four through seven of the indictment.  Id.

Villa filed a motion to dismiss on November 27, 2013.  Dkt. #65.  The government filed an opposition on December 9, 2013.  Dkt. #74.  Villa filed a reply on December 12, 2013, dkt. #79, and Robles joined in the motion on the same date, dkt. #78.  The Court held a hearing on December 16, 2013.  After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Villa states that this motion is based on "all of the facts and records in this case," Mot. Dismiss 3 n.1, as well as any additional evidence adduced at the hearing on the motion, id. at 2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

He appends to his motion an affidavit of Special Agent Bill Neff of the Drug Enforcement Administration, which was used to obtain an arrest warrant and a search warrant in this case. He does not cite any other evidence in the record, and he does not request an evidentiary hearing. Since Villa bears the burden of proving facts establishing outrageous government conduct, see United States v. Lazarevich, 147 F.3d 1061, 1065 (9th Cir. 1998), the Court relies solely on the affidavit of Special Agent Neff in deciding this motion.

Special Agent Neff's affidavit states that he learned from members of the Los Angeles Police Department ("LAPD") that Villa was a member of the "Playboys" criminal street gang, and that the Playboys were involved in the narcotics trade. Mot. Dismiss Ex. A ("Neff Aff.") at 16-17. According to the affidavit, Villa's criminal history shows multiple felony convictions for possession of a controlled substance, as well as a conviction for voluntary manslaughter. Id. at 65 n.7. As part of an investigation of Villa, Neff conducted surveillance of Villa's apartment and observed approximately five video cameras on the three visible sides of Villa's apartment. Id. at 35. Neff states in the affidavit that the presence of these cameras is consistent with "drug traffickers' standard efforts to counter surveillance." Id. Neff also states that he instructed a confidential source ("CS") to rent an apartment in the same complex as Villa's apartment. Id. at 17. According to Neff, the CS then engaged in discussions with Villa, at Special Agent Neff's direction, regarding the potential purchase of methamphetamine. Id. at 18-19. Neff further states that, during April and May 2012, the CS made multiple purchases of methamphetamine from Villa and Robles at Special Agent Neff's direction. Id. at 19-44. The affidavit also describes additional surveillance and investigation conducted by Neff in cooperation with the CS, the LAPD, and the San Bernardino County Sheriff's Department. See generally id.

## III.   DISCUSSION

Villa contends that the indictment should be dismissed because the government's conduct during the investigation that led to his indictment was sufficiently outrageous to violate the Due Process Clause of the Fifth Amendment. Mot. Dismiss 5-13. Alternatively, Villa argues that dismissal of the indictment is warranted as an exercise of this Court's supervisory powers. Id. at 13-14. The Court addresses each argument in turn.

### A.   Dismissal Based on Outrageous Government Conduct

Dismissal of an indictment based on outrageous governmental conduct is "limited to extreme cases in which the defendant can demonstrate that the government's conduct violates fundamental fairness and is so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Black, 733 F.3d 294, 302 (9th Cir. 2013) (citations and internal quotation marks omitted). The Ninth Circuit has previously held that it is outrageous for the government to engineer a criminal enterprise from start to finish, see United States v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Williams, 547 F.3d 1187, 1199 (9th Cir. 2008), use excessive physical or mental coercion to persuade an individual to commit a crime, see United States v. McClelland, 72 F.3d 717, 721 (9th Cir. 1995), or generate new crimes merely for the sake of prosecuting them, United States v. Emmert, 829 F.2d 805, 812 (9th Cir. 1987). In contrast, it is not outrageous for the government to "infiltrate a criminal organization, to approach individuals who are already involved in or contemplating a criminal act, or to provide necessary items to a conspiracy." Black, 733 F.3d at 302 (citing United States v. So, 755 F.2d 1350, 1353 (9th Cir. 1985)). Similarly, it is not outrageous for the government to "use artifice and stratagem to ferret out criminal activity," id. (citing Bogart, 783 F.2d at 1438), or to "crack an ongoing operation," United States v. Gurolla, 333 F.3d 944, 950 (9th Cir. 2003). In assessing whether government conduct meets this standard, however, "every case must be resolved on its own particular facts." Id. (quoting United States v. Bogart, 783 F.2d 1428, 1438 (9th Cir. 1986) (vacated in part on other grounds sub nom. United States v. Wingender, 790 F.2d 802 (9th Cir. 1986))).

To assist in this fact-specific inquiry, the Ninth Circuit has identified the following factors to guide the analysis of this issue:

> (1) known criminal characteristics of the defendants; (2) individualized suspicion of the defendants; (3) the government's role in creating the crime of conviction; (4) the government's encouragement of the defendant's to commit the offense conduct; (5) the nature of the government's participation in the offense conduct; and (6) the nature of the crime being pursued and necessity for the actions taken in light of the nature of the criminal enterprise at issue.

Black, 733 F.3d at 303-04.

The Court finds that all of these factors weigh against a conclusion that the government's conduct was outrageous in the present case. Regarding the first two factors, the Neff affidavit states that the government had reason to believe that Villa was a member of the Playboys criminal street gang, and that the Playboys were involved in the narcotics trade. Neff. Aff. at 16-17; see also Black, 733 F.3d at 304-05 ("Whether the government had reason to suspect an individual . . . is an important consideration . . . ."). Additionally, the affidavit states that Villa has multiple felony convictions for possession of a controlled substance, indicating knowledge of the drug trade. Neff. Aff. at 65 n.7.

As to the third factor, the relevant inquiry is "whether the government approached the defendant initially or the defendant approached a government agent, and whether the government proposed the criminal enterprise or merely attached itself to one that was already established and ongoing." Black, 733 F.3d at 305. While it is unclear from the Neff affidavit whether Villa first approached the CS about narcotics purchases or vice versa, see Neff Aff. at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

18-19, there is no evidence in the affidavit or otherwise cited by Villa indicating that the government proposed that Villa initiate a drug distribution scheme. Rather, the most logical inference from the events described in the affidavit is that a drug distribution scheme "was in existence before the government became involved," and that the "government merely activated it." See United States v. Wiley, 794 F.2d 514, 516 (9th Cir. 1986).

Under the fourth factor, "mere encouragement" of the defendant is "of lesser concern than pressure or coercion." Black, 733 F.3d at 308. The Neff affidavit contains no evidence that the CS engaged in pressure or coercion of Villa.

Under the fifth factor, the relevant inquiry focuses on the duration, nature, and necessity of the government's participation in the offense conduct. Id. at 308. Here, the Neff affidavit indicates that the CS was involved in the investigation of Villa for a relatively short period of four months. Cf. Greene v. United States, 454 F.2d 783, 786 (9th Cir. 1971) (finding outrageous government conduct based in part on government involvement of approximately three years). Moreover, the nature of the CS's involvement as a purchaser of narcotics, as opposed to a partner in a narcotics distribution scheme, weighs against finding outrageous conduct. Cf. United States v. Stenberg, 803 F.2d 422, 430-31 (9th Cir. 1986) (noting that the government's role as a "purchaser or transmitter of contraband otherwise destined for the market place" does not weigh in favor of finding outrageous conduct), superseded by statute on other grounds. Finally, there is no evidence that the government's involvement was a necessary component of the defendant's distribution scheme because neither the CS nor any other government agent provided Villa with "technical expertise or resources" that permitted Villa's distribution of narcotics to proceed. See Black, 733 F.3d at 309.

Finally, the sixth factor does not weigh in favor of finding outrageous government conduct, because, regardless of whether it is necessary for the government to make use of the CS to investigate the alleged drug distribution scheme, it is well established that the government may use undercover agents to investigate such schemes. See, e.g., United States v. Emmert, 829 F.2d 805, 811-12 (9th Cir. 1987). Based on these factors, the Court concludes that the government's conduct during its investigation of Villa was not outrageous.

Villa resists this conclusion on two grounds, neither of which is availing. First, Villa argues that the government engaged in outrageous conduct based on the factors set forth in United States v. Bonanno, 852 F.2d 434, 437-38 (9th Cir. 1988). Mot. Dismiss 10-11. In Bonanno, the court stated that government conduct is not outrageous when (1) the defendant was already involved in criminal activity when the investigation began, (2) the government agents' conduct was not necessary to enable the defendant to continue his criminal activity, (3) the agents used "artifice and stratagem" to ferret out criminal activity, (4) the government infiltrated a criminal organization, and (5) the government approached persons already

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

"contemplating or engaged in criminal activity."  852 F.2d at 437-38.  As a threshold matter, Villa's argument fails because "these factors have not been used consistently, . . . nor as a dispositive test."  See Black, 733 F.3d at 304 n.7.  Black, decided less than two months ago, provides a more current description of the law in the Ninth Circuit on this issue.  As set forth above, the government's conduct was not outrageous under the Black factors.

Moreover, even applying the Bonnano factors, Villa has not established established that the government's conduct in this case was outrageous because his arguments misapply the these factors, are contradicted by the Neff affidavit, or are unsupported by other evidence.  In this regard, Villa states that he was not involved in criminal activity at the time that the investigation leading to the instant indictment began.  Mot. Dismiss 10.  This statement is contradicted by the statements in the Neff affidavit regarding Villa's affiliation with the Playboys criminal street gang, and that gang's involvement in the narcotics trade.

Villa next states that no drug sales would have occurred if the CS had not moved into his apartment complex and sought to purchase drugs from him.  Id.  Villa provides no evidentiary support for this statement.  Moreover, while it is presumably true that no drug sales would have occurred to the CS in the absence of the undercover operation, that proposition is of no avail to Villa because it is permissible for the government to "activate" a criminal scheme that is already in existence, see Wiley, 794 F.2d at 516, including through the use of informants, see, e.g., United States v. McQuin, 612 F.2d 1193, 1195-96 (9th Cir. 1980).  As stated above, the most logical inference based on the statements in the Neff affidavit is that the Villa was already involved in a drug distribution scheme at the time that the CS moved into his apartment complex.  Regarding the third Bonanno factor, Villa alleges that the CS used "artifice and stratagem" to obtain incriminating evidence about Villa and Robles.  Mot. Dismiss 10-11.  This allegation is unavailing because Bonnano explicitly states that it is permissible for the government to use "artifice and stratagem" in its investigations.  See 852 F.2d at 437-38 ("The government's conduct is permissible when . . . the agent used artifice and stratagem to ferret out criminal activity. . . .").

As to the fourth factor, Villa argues that the CS did not infiltrate a criminal organization, but rather "merely incited [defendants] to get involved in a crime they had no intention of committing."  Mot. Dismiss 11-12.  This argument is unavailing because Bonnano did not set forth a requirement that the government infiltrate a criminal organization in order for its conduct to pass muster under the Due Process Clause.  Rather, it merely indicated that such infiltration will weigh in favor of finding the government's conduct permissible.  Bonnano, 852 F.2d at 438.  Finally, under the fifth factor, Villa argues that the government did not approach persons already contemplating engaging in criminal activity.  Mot. Dismiss 11-12.  This argument is unsupported by the evidence contained in the Neff affidavit, showing that Villa was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

a member of the Playboys criminal street gang, that the gang was involved in the narcotics trade, and that Villa had multiple convictions for possession of a controlled substance.

Villa's second argument is that the present case is analogous to <u>Greene v. United States</u>, 454 F.2d 783 (9th Cir. 1971), and <u>United States v. Batres-Santolino</u>, 521 F. Supp. 744 (N.D. Cal. 1981). This argument also fails, because these cases are inapposite. In <u>Greene</u>, the Ninth Circuit reversed the defendants' convictions after holding that the government engaged in outrageous conduct during an undercover investigation of a whisky bootlegging operation. 454 F.2d at 787. There, the court found that the government, through an undercover agent, applied substantial pressure to the defendants to convince them to sell bootleg liquour, treated the defendants as partners, provided two thousand pounds of sugar for use in distilling operations, and served as the only customer of the bootlegging operation that it "helped to create." <u>Id.</u> The court noted that the government "did not simply attach itself to an ongoing bootlegging operation for the purpose of closing it down and prosecuting the operators." <u>Id.</u> Similarly, in <u>Batres-Santolino</u>, the district court found that dismissal based on outrageous government conduct was warranted because government agents "inveigled" the defendants into a plan to import cocaine into the United States, even though the record lacked "any evidence that [the] defendants had ever been involved in drug smuggling or distribution or that they were ever involved in criminal activity." 521 F. Supp. at 751-52. Here, by contrast, the Neff affidavit shows that the government had reason to suspect that Villa was involved in criminal activity, including drug distribution, before the CS ever became involved with him.

**B.    Dismissal Under the Court's Supervisory Powers**

If the government's conduct does not amount to a due process violation, the district court may nonetheless dismiss an indictment under its supervisory powers. <u>United States v. Chapman</u>, 524 F.3d 1073, 1084 (9th Cir. 2008). A court may exercise these powers to dismiss an indictment for three reasons: "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." <u>United States v. Barrera-Moreno</u>, 951 F.2d 1089, 1091 (9th Cir. 1991) (citations omitted). Dismissal under these powers, however, is a "harsh, ultimate sanction [which is] more often referred to than invoked." <u>United States v. Owen</u>, 580 F.2d 365, 367 (9th Cir. 1978) (citations omitted). Dismissal under the Court's supervisory powers is inappropriate here for the same reasons that it is inappropriate based on outrageous government conduct. Villa has not set forth evidence of illegal or improper conduct. Rather, the only evidence cited by Villa, the Neff affidavit, shows that the government engaged in a conventional undercover operation based on a suspicion that Villa was engaged in the distribution of narcotics.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

**IV.    CONCLUSION**

Accordingly, the Court DENIES Villa's motion to dismiss.

IT IS SO ORDERED.

|  | 00 | : | 05 |
|---|---|---|---|

Initials of Deputy Clerk          CMJ